No. 14,123.

SUCCESSION OF J. T. HEWITT.   OPPOSITION OF MRS. JULIA A. HEWITT' TO FINAL ACCOUNT.

SYLLABUS.

The main contentions of the widow, who opposes the final account of the administrator, that a certain balance of indebtedness is due her and that certain property and credits are placed on the account as pertaining to the separate estate of the husband when the same is community in character, having been negatived by the evidence and denied by the court, the case will not be remanded because of inconsequential errors of debit and credit in the account when it appears certain that it would avail her nothing to so remand and would only result in a useless accumulation of costs.

A PPEAL from the Eleventh Judicial District, Parish of Natchitoches—*Porter, J.*

---

*Norwood T. Smith,* for Administrator, Appellee.

---

*Simcoe Walmsley,* for Opponent, Appellant.

The opinion of the court was delivered by

BLANCHARD, J.   Jackson T. Hewitt died in the Parish of Natchitoches, where he resided, in August 1896.

He had formerly been a resident of the Parish of Calcasieu.   He removed to Robeline, Natchitoches Parish, in the early part of the year 1893.

He was, when he removed, a man of mature years—a widower with grown children.

In March 1893, he married Mrs. Julia T. Edrington, a widow residing in the town of Robeline.

This lady owned some property at the time of her marriage, the principal part of which was money, to the extent of $2,000.00, invested in business with McCook & Co., merchants at Robeline.

Shortly after the marriage, a settlement was made with McCook & Co.   Mrs. Hewitt owed the firm an account, which was figured into the settlement, and a balance struck of $1,650.00 as the amount due her, which she drew out, part in cash, part in notes.

This money and the notes passed into the hands of the husband. The notes, it seems, were collected by him, and the whole of the proceeds of the McCook & Co. settlement were reinvested by the husband by loans placed with various parties.

J. T. Hewitt owned considerable property in Calcasieu Parish when he removed from there.   Some of it was real estate, some in the form of rights and credits.   He had been in mercantile business there with his son-in-law, A. Rigmaiden.   The partnership had been dissolved, the business closed, and the balance left over, consisting of some thousands of dollars of assets, were, when Hewitt removed to Natchitoches Parish, left in the hands of Rigmaiden for collection.

He made collections and remitted to Hewitt sums aggregating two thousand dollars or more.   This was after Hewitt's marriage to the widow Edrington.

It is also shown that when Hewitt left Calcasieu for Robeline he carried with him in money some twelve or fifteen hundred dollars.

He became at Robeline a money lender.   He had his wife's money and his own to operate with.

Neither he, nor his wife, was in any other business during their married life.

Shortly after the husband's death, his son by the former marriage and his son-in-law, Rigmaiden, went from Calcasieu Parish, where

they lived, to Robeline to look after the affairs of the dead man, to pay his debts, to settle with the widow, etc.    There had been no children born of the second marriage.

Some time later, at the request of the heirs, Rigmaiden opened the huccession in Natchitoches Parish and became the administrator.

There was property in three parishes—Natchitoches, Sabine and Calcasieu.    Two inventories were taken—one in Natchitoches, the other in Calcasieu.    It seems that the effects in Sabine Parish were claims, rights or credits due him there and they were placed on the Calcasieu inventory.

The aggregate of the two inventories was in round numbers about $3,600.00—a small part community property, the remainder the separate property of the husband.

In 1900 the administrator filed his final account.    The widow, who had, meanwhile, removed to Texas, filed oppositions thereto.

Her main contentions are:—that there is a balance due her by the community of $445.50, which is not recognized by the administrator; that certain items of credits on the inventory and account figure as the separate property of the husband, whereas they are community in character and should be accounted for as such; and that a lot and house in Calcasieu Parish, likewise asserted on the account to be the husband's separate property, also pertains to the community and should be accounted for as such in the settlement.

The trial judge rejected her opposition and homologated the account. He evidently came to the conclusion that there was nothing in the succession for the widow, that she had been settled with to the extent of her just claims, and was without further interest to contest the final account.

She prosecutes this appeal.

*Ruling*—We are of the same opinion as the district judge.

When the son and son-in-law of the dead man came to Robeline some two weeks after his death, it was not then contemplated to open his succession, but to simply pay his debts, settle with the widow and distribute the balance of his estate among the heirs who were of full age.

The evidence establishes that all the widow claimed at that time was an indebtedness of $1650.00 due her on account of separate funds, and if she were paid this she would be satisfied.    She expressed a willingness to take certain notes found among the papers of the husband, and cer-

tain personal property, in settlement of this debt, and she was allowed to do so. These, together with $20.00 in cash then handed her, aggregated $1584.75, leaving a balance due her of $65.25, which the son-in-law sent to her afterwards.

The son and son-in-law testify that they settled with her "just as she requested and at her own figures"; that they made no opposition to anything she suggested or claimed. They are corroborated by J. H. Caldwell, a well known citizen and representative in the legislature, who lives at Robeline and who was present at the settlement.

The widow denies this settlement, but the weight of evidence is against her.

The evidence, too, establishes to our satisfaction that the items of credits placed on the account as the separate property of the estate of the husband are in fact such, as is also the lot and house in Calcasieu Parish, which she claims is community in character.

This lot and house had been acquired some time before his last marriage by J. T. Hewitt, but, for some reason, the title to same had been placed in his son's name. After the marriage the son conveyed the title to him. Having been in fact his property before marriage, and, therefore, *separate* in character, the mere transfer of the title to him by the son after marriage did not suffice to convert it into *community* property.

Besides all this, the community of acquets and gains which existed between the opponent and her dead husband is largely indebted to his estate for separate funds of his own brought into it, and if because of, probably, some inconsequential errors of debit and credit in the account, we were to reverse the judgment and remand the case, it would avail her nothing. In view of this, and of the certainty of uselessly increasing costs, we decline to do it. The community is largely insolvent and it is imposible for the widow to obtain more from it than she has already received.

Judgment affirmed.